In re ADVANCE SCHOOLS, INC., a Delaware Corporation, a/k/a Advance Trade Schools, Debtor.

CALIFORNIA STATE BOARD OF EQUALIZATION, Claimant,

v.

ADVANCE SCHOOLS, INC., a Delaware Corporation, a/k/a Advance Trade Schools, Debtor.

Bankruptcy No. 75 B 4169.

United States Bankruptcy Court, N. D. Illinois, E. D.

Jan. 16, 1980.

Whitman H. Brisky and Robert O. Case of Walsh, Case & Coale, Chicago, Ill., for debtor.

Ben H. Kessler, Chicago, Ill., for claimant.

### ORDER

LAWRENCE FISHER, Bankruptcy Judge.

This matter coming on to be heard upon the Objection of Advance Schools, Inc., Debtor, to Claim No. 95 as amended filed by the California State Board of Equalization in the amount of $69,056.54, and

The Court having examined the Claim and the Objection thereto filed in this matter, and having received and examined the evidence adduced and the Stipulation of Facts entered into by the parties, and having heard the testimony of a witness and arguments of counsel, and having received and examined Memoranda of Law in support of the respective positions of the parties, and the Court being fully advised in the premises;

The Court Finds:

1. Advance Schools, Inc., is a Delaware corporation having its principal place of business in Chicago, Illinois.

2. Beginning October 1, 1970 and ending March 31, 1975, Advance Schools, Inc. offered correspondence courses throughout the country in a number of trades, such as drafting, electrical service, and radio and television repair, and maintained several sales offices and sales representatives within the State of California. During this period, students residing in the State of California enrolled, for consideration designated as tuition, in thousands of the courses offered by the Debtor. As a part of each course, the student received certain materials, which generally included books, printed lessons, training kits, and tools, when applicable. No separate charge was made for these items.

3. Cal.Rev. & Tax.Code § 6201 provides: "An excise tax is hereby imposed on the storage, use, or other consumption in this state of tangible personal property purchased from any retailer on or after July 1, 1935, for storage, use, or other consumption in this state at the rate of 3 percent of the sales price of the property, and at the rate of 2½ percent on and after July 1, 1943, and to and including June 30, 1949, and at the rate of 3 percent on and after July 1, 1949, and to and including July 31, 1967, and at the rate of 4 percent on and after August 1, 1967, and to and including June 30, 1972, and at the rate of 3¾ percent on and after July 1, 1972, and to and including June 30, 1973, and at the rate of 4¾ percent on the after July 1, 1973, and to and including September 30, 1973, and at the rate of 3¾ percent on and after October 1, 1973, and to and including March 31, 1974, and at the rate of 4¾ percent thereafter."

4. Cal.Rev. & Tax.Code § 6203 provides in part as follows:

". . . every retailer engaged in business in this state and making sales of tangible personal property for storage, use, or other consumption in this state, . . .. shall, at the time of making the sales . . .. collect the tax from the purchaser and give to the purchaser a receipt therefor in the manner and form prescribed by the board.

. . . . .

. . . 'Retailer engaged in business in this state' as used in this and the preceding section means and includes any of the following:

(a) Any retailer maintaining, occupying, or using, permanently or temporarily, directly or indirectly, or through a subsidiary, or agent, by whatever name called, an office, place of distribution, sales or sample room or place, warehouse or storage place or other place of business.

(b) Any retailer having any representative, agent, salesman, canvasser or solicitor operating in this state under the authority of the retailer or its subsidiary for the purpose of selling, delivering, or the taking of orders for any tangible personal property. . . ."

5. Cal.Rev. & Tax.Code § 6204 provides: "The tax required to be collected by the retailer and any amount unreturned to the customer which is not tax but was collected from the customer under the representation by the retailer that it was tax constitutes debts owed by the retailer to this state."

6. On or about February 25, 1971, the president of Advance Schools, Inc. signed and submitted to the California State Board of Equalization an Application for Certificate of Registration—Use Tax. The Debtor herein paid $2.50 per course as California sales or use taxes until on or about October 1, 1974. Thereafter, the Debtor charged each student $9.14 per course as California sales or use taxes and paid these amounts over to the California State Board of Equalization.

7. On April 24, 1975, Advance Schools, Inc. filed its voluntary petition for relief under Chapter XI of the Bankruptcy Act.

8. On March 31, 1977, the California State Board of Equalization filed its Second Amended Claim for use taxes owed by the Debtor herein for the period beginning October 1, 1970 and ending March 31, 1975.

9. Advance Schools, Inc. objects to the Second Amended Claim of the California State Board of Equalization on three grounds: (1) that the California Sales and Use Tax is in violation of the Constitutions of the United States and of the State of California both on its face and as applied to the Debtor herein; (2) that the Claim was improperly calculated in that the measure of the tax should have been the cost of the subject property to Advance Schools, Inc.; and (3) that Advance Schools, Inc. does not owe any part of the Claim for use taxes, as the Debtor herein was engaged primarily in rendering a service, and that any property transferred was merely incidental to the performance of that service.

10. Cal.Admin.Code, tit. 18 § 1501 provides as follows:

"Persons engaged in the business of rendering service are consumers, not retailers, of the tangible personal property which they use incidentally in rendering the service. Tax, accordingly, applies to the sale of the property to them. If in addition to rendering service they regularly sell tangible personal property to consumers, they are retailers with respect to such sales and they must obtain permits, file returns and remit tax measured by such sales. If their purchases of tangible personal property are predominantly for consumption rather than for resale, they should not give resale certificates covering such purchases but should follow the procedure prescribed in the regulation governing 'Tax-paid Purchases Resold'. The basic distinction in determining whether a particular transaction involves a sale of tangible personal property or the transfer of tangible personal property incidental to the performance of a service is one of the true objects of the contract; that is, is the real object sought by the buyer the service per se or the property produced by the service. If the true object of the contract is the service per se, the transaction is not subject to tax even though some tangible personal property is transferred. For example, a firm which performs business advisory, record keeping, payroll and tax services for small businesses and furnishes forms, binders, and other property to its clients as an incident to the rendition of its services is the consumer and not the retailer of such tangible personal property. The true object of the contract between the firm and its client is the performance of a service

and not the furnishing of tangible personal property. Similarly, an idea may be expressed in the form of tangible personal property and that property may be transferred for a consideration from one person to another; however, the person transferring the property may still be regarded as the consumer of the property. Thus, the transfer to a publisher of an original manuscript by the author thereof for the purpose of publication is not subject to taxation. The author is the consumer of the paper on which he has recorded the text of his creation. However, the tax would apply to the sale of mere copies of an author's works or the sale of manuscripts written by other authors where the manuscript itself is of particular value as an item of tangible personal property and the purchaser's primary interest is in the physical property. Tax would also apply to the sale of artistic expressions in the form of paintings and sculptures even though the work of art may express an original idea since the purchaser desires the tangible object itself; that is, since the true object of the contract is the work of art in its physical form.

When a transaction is regarded as a sale of tangible personal property, tax applies to the gross receipts from the furnishing thereof, without any deduction on account of the work, labor, skill, thought, time spent, or other expense of producing the property.

Examples of service enterprises and regulations pertaining thereto will be found in regulations which follow."

11. Howard Hoogesteger, Vice President of Education of Advance Schools, Inc., testified at a hearing held on August 11, 1977 that the students enrolled in Debtor's correspondence courses received the lessons, kits, and other materials at varying times throughout each course. He further testified that Advance Schools, Inc. did not sell the subject items of tangible personal property other than providing the same in connection with correspondence courses, with the possible exception of occasional replacement sales to active students whose materials had been destroyed, damaged, or otherwise lost. These infrequent replacement sales would be made at cost plus shipping charges.

Mr. Hoogesteger also testified as to the school's refund policy in connection with partially completed courses. A refund was calculated on a pro rata basis whereby the student was charged only for those lessons which he had completed. The amount of personal property transferred prior to the student's termination did not enter into the calculation of the refund. The student was permitted to keep any items of personal property which had already been transferred to him but was unable to obtain other items that would have been transferred during the remainder of the course. A copy of the standard installment contract used by Advance Schools, Inc. during the period in question is attached to the Stipulation of Facts as Joint Exhibit "B". The "Refund Policy" set forth in that contract corroborates Mr. Hoogesteger's testimony in this regard, except that it provides for an additional termination or cancellation charge.

Mr. Hoogesteger testified further that Advance Schools, Inc. had approximately thirty-five teachers 'at the peak of the situation', that is, during the years 1972, 1973, and into early 1974. The number of students actively doing lessons at that time was approximately 65,000, indicating a faculty-student ratio of less than 1/1800. The teachers received questions from the students regarding the study materials and responded by phone or letter with any necessary instruction or explanation. They also graded papers and examinations, although some of these were computer graded.

12. The parties stipulated as to the "deemed retail price" of property transferred for each course and also as to the cost to Advance Schools, Inc. of property transferred for each course during the subject period. A list of these amounts is attached to the Stipulation of Facts and is marked Joint Exhibit "C".

13. The parties further stipulated that in the event Advance Schools, Inc. is found to be liable for payment of California use taxes based upon the cost to the Debtor herein of property transferred, then liability for the period in question is $27,424.37. The agreed interest on this amount, for the period prior to the filing of the Chapter XI petition, is $1,582.46.

14. The parties further stipulated that in the event Advance Schools, Inc. is found to be liable for payment of California use taxes based upon the market price of property transferred, then liability for the period in question is $65,289.18. The agreed interest on this amount, for the period prior to the filing of the Chapter XI petition, is $3,767.36.

The Court Concludes and Further Finds:

1. Under California law, where a transaction involves both a transfer of property and the rendition of services, and each is a consequential element of the transaction capable of ready separation, the services and the property may be treated separately for tax purposes, and the transferor may be required to collect and remit a use tax based upon that portion of the consideration paid which is attributable to the sale of tangible personal property.

Regulation 1501, set out in full above, recognizes and provides for three possible situations with regard to mixed sales of services and property. The property may be considered the primary item sold and tax would apply to the gross receipts, without any deduction on account of labor or skill used in producing the property. Paintings and sculptures are cited in the regulation as examples of such transactions. On the other hand, the service may be considered the primary item sold, with any property being transferred only incidentally to the performance of the service. The regulation offers as an example of this type of transaction a firm which performs business advisory, record keeping, payroll, tax, and similar services for small businesses. Such a firm customarily furnishes forms, binders, and other items of personal property, but these items are transferred merely as an incident to the performance of a service and are not taxable. The third possibility recognized by Regulation 1501 is that of the truly mixed transaction:

". . . . If in addition to rendering service they regularly sell tangible personal property to consumers, they are retailers with respect to such sales and they must obtain permits, file returns and remit tax measured by such sales . ."

The second paragraph of Regulation 1501 delineates the difference between a sale of tangible personal property and the transfer of tangible personal property incidental to the performance of a service. The distinction is one of the true object of the contract, ". . . . that is, is the real object sought by the buyer the service per se or the property produced by the service . . . ." Cal.Admin.Code, tit. 18 § 1501. Advance Schools, Inc. contends that the true object of its contracts was the educational service rather than the personal property transferred, and that a single contract calling for both the rendition of services and the transfer of property cannot be taxable in part and nontaxable in part. Debtor argues that if the transaction is severed, the true object test would be rendered meaningless; it would no longer be necessary to determine the overall object of the mixed contract, as each part would then be treated separately.

The Debtor's reliance on the true object test is misplaced. The test is appropriate where the services rendered are inseparable from the property transferred that is, where the services, so to speak, find their way into the property. All the examples used in Regulation 1501 to illustrate the true object test involve transactions in which the services become an integral part of the property; e. g., the artist's skill and labor are embodied in his painting; the record keeping, tax, and similar services of a firm which performs business advisory are embodied in the forms, binders, and other property transferred during the course of the transaction. The language of the true object test as set out in Regulation 1501

supports this construction: ". . . . is the real object sought by the buyer the service per se or the property *produced by the service . . . ."* (Emphasis added.) Thus, the true object test should be used where the services and the property are inseparable and is inapplicable where these two elements are distinct.

This interpretation of Regulation 1501 finds support not only in the case law construing that provision but also in judicial interpretation of the "personal service exception" as embodied in the laws of other states. In *Houghton Mifflin Co. v. State Tax Commission,* 373 Mass. 772, 370 N.E.2d 441 (1977), the taxpayer purchased reproduction proofs from various independent typesetters and type composers. The compositor used his training and experience to arrange the manuscript into type, eventually producing the proofs for the taxpayer. The court held that the publisher's basic purpose in contracting with the compositors was to obtain the reproduction proofs in which the typesetter's skill and labor were embodied. The court explained:

". . . where the services and the property are inseparable, because of the integrated nature of the transaction, the character of the transaction must be analyzed to ascertain whether the buyer's basic purpose was to acquire the property which was sold to it, or to obtain the services." *Id.* at 442.

On the other hand, where the services and property are separable, they should be treated differently for tax purposes, as in *Goodyear Aircraft Corp. v. Arizona State Tax Comm'n,* 1 Ariz.App. 302, 402 P.2d 423 (1965). In that case, airplane subassemblies were deliberately subjected to stress and destroyed in order to develop engineering information for the purchaser. The taxpayer billed the manufacturer for both the engineering services and the actual cash value of the items destroyed. The court held that since the engineering services could be readily separated from the property destroyed, and since the property was not an inconsequential element of the transaction, a tax was due based upon the value of that property. *Id.* at 428.

In *Overly Mfg. Co. of California v. State Board of Equalization,* 191 Cal.App.2d 20, 12 Cal.Rptr. 391 (1961), the California Court of Appeals recognized the severability of a transaction for tax purposes. The taxpayer charged a lump sum price for the manufacture of frames to specification for various structures and for the manufacture and installation of doors. The taxpayer was considered a retailer as to the frames because it had not installed them, and the retail sales value attributable to the frames was therefore segregated from the contract price for purposes of computing the sales tax. The court referred to the "dual nature of the contract" and quoted Ruling 1 (Cal. Admin.Code, tit. 18, § 1901), the predecessor to Regulation 1501:

"Persons engaged in the business of rendering service are consumers, not retailers of the tangible personal property which they use incidentally in rendering the service. Tax, accordingly, applies to the sale of the property to them. If in addition to rendering service they regularly sell tangible personal property to consumers, they are retailers with respect to such sales."

*Id.* at 394–95. This text remains unchanged in Regulation 1501 and clearly indicates that that provision recognizes the severability for tax purposes of a single transaction involving both the rendition of services and transfer of property.

The California State Board of Equalization has promulgated several other regulations which recognize the severability of certain mixed transactions. *See* Cal.Admin. Code, tit. 18 § 1505 (morticians are retailers of caskets, boxes, vaults, and clothing); Cal. Admin.Code, tit. 18 § 1548 (tire retreaders and recappers are retailers of the tangible personal property they furnish to consumers, and if a lump-sum charge is made, 75% is considered to be the sales price of the property); Cal.Admin.Code, tit. 18 § 1521 (contractors are consumers of "materials" used by them in fulfilling construction contracts, but they are retailers of "fixtures" which they furnish and install); *cf., King v.*

*State Bd. of Equalization,* 22 Cal.App.3d 1006, 99 Cal.Rptr. 802 (1972).

The Ohio Supreme Court, in a lengthy discussion of the mixed transaction problem in *Accountants Computer Services, Inc. v. Kosydar,* 35 Ohio St.2d 120, 298 N.E.2d 519 (1973), quoted the full text of Regulation 1501 and observed that Ohio law is in accord with California law regarding the "personal service exception". The court explained:

> ". . . . *Where the property and the services are distinct and each is a consequential element capable of ready separation,* it cannot be said one is an inconsequential element within the exemption provided by the statute."

*Id.* at 526 (citing *Rice v. Evatt,* 144 Ohio St. 483, 59 N.E.2d 927 (1945)). Thus, the transaction is severable for tax purposes where the service and the transfer of property are distinct and consequential elements of the transaction.

Here, the services rendered are separate from the property transferred. Advance Schools, Inc. grades the students' examinations and monitors their progress, corresponding with them if they fall behind. The student may make inquiries and consult with instructors by mail or telephone as to particular problems which may arise. Library services are made available, and the student may obtain letters of recommendation to prospective employers. These services are separate from the lesson materials transferred and cannot be considered inconsequential.

Nor can the property transferred be deemed an insignificant aspect of the transaction. The materials transferred along with each course, valued at the "deemed retail prices" to which the parties have stipulated, constituted, on the average, almost 20% of the total tuition charged. These materials, which included books, printed lessons, tools, and training kits, provided the student his basic instructional program. Thus, the service and the transfer of property are distinct and consequential elements of the transaction, and the third sentence of Regulation 1501 applies. Enterprises which

render services and, in addition, sell tangible personal property, and retailers of that property and must remit tax measured by such sales.

This conclusion is in accord with the administrative decision *In the Matter of Bell and Howell Schools, Inc.,* California State Board of Equalization, Account No. SC OHA 30 605383 (June 24, 1975) and with a Sales Tax Ruling promulgated by the Board in 1965. 3 State Tax Reporter—California (CCH) ¶ 60–102. A similar result has also been reached by the Supreme Court of New Mexico in a 1976 decision involving the same taxpayer. *Advance Schools, Inc. v. Bureau of Revenue,* 89 N.M. 79, 547 P.2d 562 (1976). In that instance, Advance Schools, Inc. had paid the New Mexico Board of Revenue a tax on $50.00 per student enrollment for materials transferred with each course. The Commissioner assessed a tax based on the entire tuition paid. Advance Schools, Inc. brought an action against the Board of Revenue arguing that it should not be subject to New Mexico's Gross Receipts Tax. The New Mexico tax applied to both sales of property and sales of services, but only services performed in New Mexico could be taxed. A regulation stated that all receipts from selling correspondence courses were subject to the Gross Receipts Tax. The New Mexico Court of Appeals held that the primary activity of the taxpayer was the selling of educational materials, any services being incidental thereto, and tax was therefore due based upon the entire amount of tuition paid. *Advance Schools, Inc. v. Bureau of Revenue,* 89 N.M. 133, 548 P.2d 95, 97 (1975). The Supreme Court, however, reversed, explaining, "[W]e have great difficulty understanding why the Bureau of Revenue characterized ASI's transactions as primarily sales of tangible personal property." *Advance Schools, Inc. v. Bureau of Revenue,* 89 N.M. 79, 547 P.2d 562, 564 (1976). The court found that Advance Schools, Inc. offered substantial educational services and pointed out that there is no established test for treating a sale of property accompanied by a sale of services. The

taxpayer had not separated its charges for the two elements of the transaction, but it had paid tax on materials transferred with each course valued at $50.00 per student. The court found that the tuition could be divided on that basis, as that value had not been controverted at the hearing, and the record supported that amount as the value of the property sold. *Id.* at 565. That portion of tuition attributable to services was nontaxable, because the services were performed outside the state. The court also held that the regulation regarding taxation of correspondence school receipts was invalid insofar as it attempted to tax all receipts from selling correspondence courses in New Mexico. *Id.*

The transactions sought to be taxed by the California State Board of Equalization in the case at bar are severable for tax purposes, and Advance Schools, Inc. is liable for payment of use taxes on that portion of the tuition collected from its California students which is attributable to the sale of tangible personal property.

2. The contention of the Debtor herein that the measure of the use tax should be the cost to Advance Schools, Inc. of the subject property is without merit. The measure of the use tax is the sales price of the property to its ultimate user. Advance Schools, Inc. was not the ultimate user of the subject property. The California students were the users of the property, and it is unrealistic to assume that the property was sold to them at cost plus shipping charges without any mark-up by Advance Schools, Inc. The proper measure of the use tax is, therefore, the market price of the subject property for the relevant period. The parties have stipulated that if Advance Schools, Inc. is liable for payment of use taxes based upon the market price of the property transferred, then the amount of such tax liability for the period in question is $65,289.18.

■ 3. The contention of the Debtor herein that the California Sales and Use Tax is in violation of the Constitutions of the United States and of the State of California is also without merit. The Debtor

contends that the tax discriminates between an out-of-state correspondence school and an in-state residential trade school. Advance Schools, Inc. must be compared, however, to an in-state correspondence school, not to a residential trade school. There has been no showing that an out-of-state correspondence school is treated differently under the sales and use tax statute from an in-state correspondence school.

■ 4. The California State Board of Equalization is entitled to receive interest on its tax claim up to the date of the filing of the petition under Chapter XI. No postpetition interest will be allowed.

The United States Supreme Court held in *New York v. Saper*, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949), that tax claims against a bankrupt bear interest only to date of bankruptcy. The *Saper* rule has been extended to arrangement proceedings under Chapter XI. *United States v. General Engineering & Mfg. Co.*, 188 F.2d 80 (8th Cir. 1951), *aff'd*, 342 U.S. 912, 72 S.Ct. 358, 96 L.Ed. 682 (1952).

In the instant case, the taxes were incurred and accrued prior to the institution of arrangement proceedings. The Claim of the California State Board of Equalization is entitled to a fourth priority, and it bears interest only to the date of the filing of the petition. The parties stipulated that if Advance Schools, Inc. is liable for payment of use taxes based upon the market price of property transferred, then the interest on that amount for the period prior to filing the petition seeking relief under Chapter XI is $3,767.36. Advance Schools, Inc. is therefore liable for payment of interest in the amount of $3,767.36.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Claim No. 95 as amended of the California State Board of Equalization be, and the same is hereby allowed as a priority claim for taxes in the amount of sixty-five thousand two hundred eighty-nine dollars and eighteen cents ($65,289.18), plus interest of three thousand seven hundred sixty-seven dollars and thirty-six cents ($3,767.36) for the peri-

od prior to the filing of the petition seeking relief under Chapter XI, a total of sixty-nine thousand fifty-six dollars and fifty-four cents ($69,056.54).