NEW ENGLAND TELEPHONE
AND TELEGRAPH CO.

v.

R. Gary CLARK, Tax Administrator.

No. 92–97–M.P.

Supreme Court of Rhode Island.

April 26, 1993.

Peter J. McGinn, Tillinghast, Collins & Graham, Providence, Jeanne Conroy, New England Telephone Co., Boston, MA, for plaintiff.

Bernard J. Lemos, Marcia McGair Ippolito, Div. of Taxation, for defendant.

## OPINION

FAY, Chief Justice.

This matter is before the court pursuant to a petition for writ of certiorari. The tax administrator filed this petition, seeking review of a District Court judgment that held that certain engineering services provided to New England Telephone and Telegraph Company (NET) by American Telephone and Telegraph Company (AT & T) were not taxable under G.L.1956 (1988 Reenactment) § 44–18–12.

The engineering services involved in this dispute are associated with updating certain central-office locations of NET. A central office is like a police officer whose job is directing traffic, controlling the direction and flow of travel associated with a certain geographic location. The central office is responsible for switching telephone lines to interconnect with any other telephone line in the same exchange area or any other location in the state, country, or world. Rhode Island generally has one central office per community, although the large metropolitan areas may have more because of their greater customer density. Each central office has specific, generic equipment that is common to all central offices. As a certain geographic location grows and more phone lines are added, the central office must be updated to accommodate the increased activity. This activity involves introducing telecommunication equipment into the present infrastructure of the central-office location. Engineering services must be performed to ensure the proper interfacing of the new equipment with the existing equipment in the central-office location. A chief engineer of NET testified that a central office can be seen as a large loop, and in order for equipment to be added to the office, the loop must be opened. This procedure must be done in a very exacting and precise manner to ensure that service to telephone customers is not interrupted.

As a result of an audit for the period from January 1984 through December 1986, the tax administrator imposed a tax of $157,698.39 on engineering services provided to NET by AT & T in updating central-office locations. In audits conducted before the divestiture of AT & T, the same type of engineering services were furnished to NET by Western Electric Company, a predecessor in interest to AT & T, yet no taxes were imposed on those services. The tax administrator avers that the assessed engineering services are so inextricably interwoven with the sale of the equipment that the services are part and parcel of a single transaction. New England Telephone submits that the purchase of the engineering services and the purchase of the equipment are two separate transactions. Consequently NET asserts that the engineering services are nontaxable professional services.

The tax administrator also asks us specifically to review an evidentiary issue regarding the admissibility of hypothetical questions in a tax hearing.

## I

■ "A writ of certiorari brings up the record of the lower court for inspection and review on questions of law only. * * * Review is limited to the allegations of error which appear in the petition for the writ." *Statewide Multiple Listing Service, Inc. v. Norberg,* 120 R.I. 937, 940, 392 A.2d 371, 372 (1978). *See also* G.L.1956 (1985 Reenactment) § 8–8–32. Furthermore, this court affords great weight to findings of fact by a trial justice sitting without a jury. "We shall not disturb the findings of the trial justice unless it is established that he or she misconceived or overlooked relevant and material evidence or was otherwise clearly wrong." *Cerilli v. Newport Offshore, Ltd.,* 612 A.2d 35, 39 (R.I.1992). In his petition the tax administrator alleges that the trial judge misconceived critical evidence, improperly relied on hypothetical questions, and misapplied the real-object test in holding that the particular engineering services were not taxable as "part of the sale."

The primary issue before this court is whether the engineering services rendered in conjunction with NET's acquisition of central-office equipment are subject to the Rhode Island use tax as "services that are part of the sale" of tangible personalty according to § 44–18–12. The trial judge found that the engineering services were not "part of the sale" under the statute and consequently held that the services were not subject to taxation.

Our difficulty lies in the premise that most transactions, to a certain degree, involve some amount of personal service and some amount of tangible property.

"In the jungle of verbiage that characterizes sales and use tax statutes it must not be forgotten that the privilege taxed is that of selling at retail tangible personal property in this state or the use or consumption, in this state, of any item or article of tangible personal property as defined in [the statute]." *Cities Service Co. v. Tidwell,* 534 S.W.2d 298, 302 (Tenn.1976).

We now begin our own safari into the tax jungle by analyzing the appropriate statute. Section 44–18–12 provides in part that "(1) 'Sale price' means the total amount for which tangible personal property is sold or leased or rented * * * valued in money * * * including all of the following: (A) *Any services that are a part of the sale, valued in money, whether paid in money or otherwise.*" (Emphasis added.) Subsection (2)(C) of § 44–18–12 specifically excludes labor or services rendered in installation of the property when the charge is separately stated.

■ On a number of different occasions this court has analyzed the taxability of mixed transactions. We begin by reviewing the well-reasoned *Statewide* opinion. In *Statewide* this court outlined three categories for analyzing mixed transactions. The three situations that the court profiled were these:

1. The service is the main item purchased, and the property received is incidental to that service.

2. The service aspect and the property aspect of the transaction are readily separable.

3. The property is the main item purchased, and the service is incidental to the receipt of that property. *Statewide*, 120 R.I. at 942, 392 A.2d at 374.

The court concluded that transactions would not be taxable when service is the real object of the transaction (situation 1), but instances wherein property is the real object of the transaction would be taxable (situation 3). (*See Hasbro Industries, Inc. v. Norberg*, 487 A.2d 124 (R.I.1985), for another application of the real-object test.) The *Statewide* court did not directly confront the situation in which the service and the property aspects of the transaction are readily separable (situation 2). We believe that the logical implication of the *Statewide* decision is that when there is a fixed and an ascertainable relationship between the value of the article and the value of the services rendered, and each is a consequential element capable of a separate and distinct transaction, then the elements must be analyzed as separate transactions for tax purposes. *See Goodyear Aircraft Corp. v. Arizona State Tax Commission*, 1 Ariz.App. 302, 402 P.2d 423 (1965); *Accountants Computer Services, Inc. v. Kosydar*, 35 Ohio St.2d 120, 298 N.E.2d 519 (1973). When one cuts through the jungle of verbiage, the simple result would be that the property aspect of the transaction would be taxable and the service aspect of the transaction would not be taxable.

■ Our task is to determine the real object of NET's transaction in updating its central offices. We believe, as did the trial judge, that the real object of the transaction was to expand and update an intricate and complex central-office location without interrupting telephone service to customers. We conclude that this task involved the purchase of certain equipment and the purchase of complex engineering services, two separate, albeit related, transactions.

An engineer on behalf of NET testified that the equipment installed at the central offices was standard and not custom-made. There is no physical difference in the equipment installed at each location. The difference is the engineering services that are applied to the equipment that allow it to interact with the specific network at each location. The equipment sold by AT & T is listed and priced in an ordering and price-guide manual. Orders can be placed for equipment only or services only or combined equipment and services. The price of the equipment remained constant whether or not engineering services were ordered. Engineering services are separately stated and separately billed. The equipment and the engineering services are provided by different divisions of AT & T, which are located in two distinct states. The record reflects that the engineering services would have to be paid for if the ordered equipment was not subsequently purchased. The equipment would be useless without the engineering services, and the services would be useless without the equipment.

It is important to identify the type of engineering services involved in this transaction. Engineering services can be separated into design engineering and professional engineering. Design engineering involves the development of the equipment whereas professional engineering takes the design-engineered equipment and adapts it to the specific central-office location. The cost of design engineering is included in the price of the equipment whereas the cost of professional-engineering services is separate and distinct from the equipment price.

■ At the time of the audit NET performed 75 to 80 percent of its own engineering services, and those services were not taxed. For economic reasons and in some highly complex cases, NET purchased both the equipment and the services from AT & T. In this instance we are analyzing such a transaction. The tax administrator emphasizes that we should not be swayed by the taxability of other situations or transactions. He avers that we should only be concerned with what happened in this particular instance when AT & T provided both the services and the equipment.

Although we do acknowledge his position, the tax administrator must realize that our decisions must not be made in a vacuum, even when tax questions are involved. If we held that the services were "part of the sale" based strictly on the premise that both the services and the equipment were provided by AT & T, we would be extolling form over substance. Taxpayers would then make certain that purchases involving both a service aspect and an equipment aspect would be made from separate vendors. Those penalized would be purchasers forced to deal with the same vendor because of economic reasons because no other vendor provides the services or because they are unable to provide the services themselves. Likewise, by holding that the services are not taxable simply because they are invoiced separately would be ignoring the entire transaction and improperly encouraging taxpayers to separate invoices. We would then be concentrating on one brick in the building while ignoring the entire structure. The real-object test must be applied to the totality of the transaction.

The tax administrator places great emphasis on *Kellogg Switchboard & Supply Corp. v. Department of Revenue*, 14 Ill.2d 434, 153 N.E.2d 45 (1958). The *Kellogg* court held that a $90.34 tax was due on the sale of a telecommunication switchboard. The court held that the services supplied with the equipment were incidental to and an inseparable part of the sale of the equipment. The *Kellogg* court did not analyze the facts under the three-part analysis that we adopted in *Statewide.* Had we analyzed the facts of *Kellogg*, we believe that the transaction would have fallen into the third situation noted in *Statewide*, and as such the entire transaction would have been taxable.

■ We believe that the transaction that we are analyzing would fall into the second situation of the *Statewide* analysis. In assessing this specific transaction, we believe that neither the telecommunications equipment nor the engineering services could be described as an incidental part of this transaction. The judge's summary of the transaction was that

"[i]n the instant case, the Court believes that the real object of the transaction was to expand or update a switching office without interrupting service. The real object was not simply the purchase of equipment—it included obtaining engineering plans and proposals and drawings of the finished assembly to be used for repair and future modification. Both the equipment and the engineering services could stand alone, and could be priced separately. However the raw equipment without the engineering service would be useless, as would the engineering services without the equipment. The real object of the transaction was the purchase of both aspects of the project."

We concur with the judge's analysis. Consequently as both the equipment and the service element of the transaction constitute a distinct and separable transaction, unlike the transaction analyzed in *Keystone Auto Leasing, Inc. v. Norberg*, 486 A.2d 613 (R.I.1985), the engineering services supplied by AT & T would not be subject to taxation under § 44–18–12.

II

The tax administrator next contends that the judge improperly relied on inadmissible hypothetical questions. The tax administrator presented Antonio Calo (Calo), an employee of the Rhode Island Division of Taxation (division), as one of its primary witnesses. Calo is a senior revenue agent with the division and at the time of the District Court proceeding had been employed for fifteen years by the division's field-audit section. He was assigned to conduct the audit of NET for the audit period from January 1, 1984, to December 31, 1986. He conducted audit work at five different sites and testified that the audit entailed approximately a thousand staffing hours. Calo also testified that he was involved in the previous audit of NET for the period ending December 31, 1983.

Counsel for NET, during cross-examination, posed a series of approximately five to seven hypothetical questions, asking Calo whether he would tax certain engineering

services if equipment and services were provided by different vendors or if the cost of the services far outweighed the cost of the equipment. The tax administrator continually objected to the form of the questions. He asserted that Calo had not been qualified as an expert witness and emphasized that auditing is not accomplished in the abstract but must be applied to a particular set of factors. The trial judge understood that Calo was answering in the abstract and allowed the questions as proper cross-examination.

■ Calo testified that he believed the transaction was taxable under his interpretation of § 44–18–12. The trial judge, although well aware that auditing is not executed in the abstract, believed that Calo could not make that statement and remain shielded from an analysis of his interpretation. The judge believed that there needed to be some analysis of what made the auditor decide that the transaction resulted in an imposition of taxation. We believe that the hypothetical questions allowed the trial judge readily to analyze and understand the auditor's justification of what he maintained constituted a taxable transaction and more specifically why the specific transaction was taxable as part of the sale.

■ The permissible scope and extent of cross-examination rests in the sound discretion of the trial justice, and rulings of proper cross-examination will not be overturned absent an abuse of discretion. *State v. Morejon*, 603 A.2d 730, 736 (R.I. 1992). Questions designed to explain, contradict, or discredit testimony given by a witness are permitted. *Id.*

" '[T]he question of whether a witness is qualified to express an expert opinion is a matter that is committed to the sound discretion of the trial justice, and the exercise of such discretion will not be disturbed on appeal absent a showing of abuse.' * * * '[A] trial justice does not abuse his or her discretion merely because he or she permits a witness to testify whose qualifications have not been shown to be extraordinary or superlative.' " *Margadonna v. Otis Elevator Co.*, 542 A.2d 232, 234 (R.I.1988).

■ Prime considerations in determining whether a witness can be qualified as an expert include employment and prior experiences. *State v. Villani*, 491 A.2d 976, 979 (R.I.1985). This court has reviewed cases in which qualifications of an expert were not sterling or paramount. In *Rossilli v. Iacovelli*, 88 R.I. 456, 149 A.2d 709 (1959), we analyzed a transaction that involved the construction of a garage. The contractors left the garage partially completed, and Rossilli was forced to finish the construction. The trial justice allowed Rossilli to testify regarding the value of labor performed by him in the completion of the building. The defendant argued that Rossilli lacked qualification to testify concerning the value of the services. In holding that Rossilli could testify, we reiterated the premise that qualifications of an expert need not be superlative or extraordinary. We held that the trial justice did not commit error and stated that "the witnesses were permitted to testify as to the value of services rendered by themselves in a field of work in which they had some experience." *Id.* at 459, 149 A.2d at 711; *see also Loughran v. DelSanto*, 79 R.I. 150, 85 A.2d 66 (1951). We believe that Calo had sufficient knowledge, after fifteen years of division audit experience, to be treated as an expert witness for the limited purpose of questioning his foundation why he would impose taxation under an interpretation of what is part of the sale.

■ Although there was no motion before the lower court to qualify Calo as an expert, it is clear from the record that the judge treated Calo as an expert. We believe that this was not error sufficient to amount to an abuse of discretion. Furthermore, even if we found an abuse of discretion here, we find it to be harmless error. In determining whether an error is harmless, this court considers such factors as the importance of the witness's testimony, the question of whether the testimony was cumulative, the presence or absence of corroboration or contradiction of the testimony, the extent of cross-examination otherwise permitted, and the overall strength of

**304**

the case. *State v. Ramos*, 553 A.2d 1059, 1064 (R.I.1989).

Although the tax administrator correctly points out that the trial judge specifically referred to Calo's answers to the hypothetical questions, we find it to be a very minor part of her decision. On page 4 of her decision she specifically makes reference to Calo's answer regarding the taxability issue when the services and the equipment are purchased from two separate vendors. We find this reference to be a minor and harmless part of her decision for two reasons. Earlier in her decision the trial judge specifically stated that she found no logic in assessing a tax in a situation in which AT & T provides both the services and the equipment. In fact even before she made reference to Calo's answers, she had concluded that the real object of the transaction was both the purchase of the equipment and the purchase of services. In the final decision and order of the administrative hearing of the division, the tax administrator specifically admitted that the services would be exempt if not rendered in connection with the purchase of the equipment. Because of the strength of NET's case, allowing the hypothetical questions did not rise to prejudicial error.

For the reasons stated, the tax administrator's petition for certiorari is denied and the writ heretofore issued is quashed. The judgment of the District Court granting AT & T a tax refund is affirmed, and the papers in this case are remanded to the District Court with our decision endorsed thereon.