[No. A118657. First Dist., Div. Four. Jan. 31, 2008.]

DELL, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
DIANE MOHAN et al., Real Parties in Interest.

COUNSEL

Paul, Hastings, Janofsky & Walker, Ned N. Isokawa, John P. Phillips and Jason Bergmann for Petitioners.

No appearance for Respondent.

Payne & Fears, Charles M. Louderback, Stacey L. Pratt, James T. Conley; Ellis & Rapacki, Fredric L. Ellis and Edward D. Rapacki for Real Parties in Interest Diane Mohan and DeMarco Enterprises, Inc.

Edmund G. Brown, Jr., Attorney General; Randall P. Borcherding and Julian O. Standen, Deputy Attorneys General, for Real Party in Interest State Board of Equalization.

OPINION

**SEPULVEDA, J.**—Several consumers brought actions contesting the imposition of sales and use taxes on optional service contracts sold with computers. In

this action, plaintiffs sued Dell for unfair and deceptive business practices for collecting tax on the service contracts, and Dell cross-complained against the California State Board of Equalization (SBE) for a refund of the disputed taxes Dell remitted to the tax agency.[1] (Bus. & Prof. Code, § 17200; Civ. Code, § 1770; Rev. & Tax. Code, § 6901.) The parties agreed to a bench trial on the discrete issue of whether the sales of service contracts to plaintiffs were subject to California sales or use tax. The trial court concluded that the sales were not subject to tax. Dell and the other defendants petitioned this court for a writ of mandate. Defendants asked us to review and to reverse the trial court's decision.

We have reviewed the decision and, following briefing and oral argument, conclude that the trial court correctly found that the sales were not taxable. California taxes the retail sale and use of tangible personal property but not the sale or use of intangible personal property or the performance of services. (Rev. & Tax. Code, §§ 6051, 6201.) Dell and SBE concede that optional service contracts are not tangible personal property and are generally exempt from taxation. Dell and SBE claim that taxation of Dell service contracts is nevertheless proper because Dell sells its computers and service contracts for a single lump-sum price, without a separate statement on the invoice of the charge for the service contract.[2] We reject the claim.

While Dell computers and service contracts are sold concurrently for an aggregate price, they are distinct consumer items and each is a significant object of the transaction. Dell service contracts have readily ascertainable values, even without itemized invoices. Accordingly, SBE cannot decree that the exclusive means to establish a tax exemption for an optional service contract sold together with a taxable product is that its value be separately stated on the retailer's invoice, absent a statute, regulation, or consistent administrative interpretation of the laws mandating a separate statement of value.

---

[1] Dell is a collective term for defendants Dell, Inc., Dell Catalog Sales L.P., and Dell Marketing L.P. Additional defendants are QualxServ LLC, and BancTec, Inc. (BancTec), which provide computer support services for Dell products. All defendants are represented by the same counsel.

[2] Consumer law requires retailers to disclose the "terms" of a service contract, and to conspicuously state "[a]ll fees, charges, and other costs that the buyer must pay to obtain service." (Civ. Code, § 1794.4, subds. (a), (c)(5)(I); accord, 15 U.S.C. § 2306(b).) We have no occasion here to consider whether Dell's failure to separately state the price of its service contract is an inadequate disclosure of the contract's terms or service charges. We are concerned solely with the tax consequences of Dell's business practice.

## I. FACTS[3]

Dell sells computer systems and services to individuals, businesses, and governmental agencies. Dell operates on a direct-sales business model, rather than through traditional retail outlets. Customers primarily order products directly from Dell by telephone, over an Internet Web site, or by other direct means. Dell products are marketed in various packages, which consist of hardware, software, a warranty, and a service contract. Each configuration bears a single, lump-sum price: the components are itemized but not separately priced. The customer has the option of changing the configuration of a package by switching hardware, software, or service contract components in exchange for an increase or decrease in the lump-sum price. The price effect of such changes is identified in Dell advertising or interactive computer screens in the format of "add an x for $y" or "delete the x and reduce the package price by $y" or "substitute an x for the z for a price change of $y." For example, add an extended service contract for $119, or substitute a 100-gigabyte hard drive with a 250-gigabyte hard drive for an additional $49. After the changes to the package configuration are selected, the revised lump-sum package price is stated to the customer without a breakdown of individual prices for the various components.

The statement of the purchase price to the customer is either an acknowledgement of the purchase if the customer pays in full at the time of the order, or an invoice if money is due. An invoice or acknowledgement identifies the computer's components and states the total sales price for the aggregate of the components selected by the customer. The invoices and acknowledgements generally do not list separate unit prices for the computer's various components (e.g., memory, hard drive, monitor, service contract). Internally, Dell does assign unit prices to many of the computer systems' components. Those unit prices appear, among other places, in pricelists and Dell's computerized record database.

Computer systems sold by Dell are warranted at no additional cost to the customer. The warranties cover defects in materials and workmanship in Dell-branded products. The warranties are "return to facility" warranties requiring the consumer to return the defective product or part to Dell for repair or replacement. Computer systems sold by Dell also typically include computer service contracts. Many such service contracts provide for the dispatch of an onsite repair technician, while others provide for repair or replacement within certain timeframes.

A standard service contract is included in every initial package (the package before the customer customizes its configuration). A customer can

---

[3] The facts stated here are based on the trial court's statement of decision and evidence submitted at trial.

eliminate this standard service contract from the package and receive a reduction of the lump-sum purchase price. Extended service contracts are available that vary in duration, coverage and benefits. The selection of an extended service contract will have a varying effect on the lump-sum price based upon the contract's duration and other terms. It is not necessary that any of these extended service contracts be included in order for a customer to purchase a package of hardware, software, and basic warranty. Dell's internal pricelist specifies a particular dollar figure for each type of standard and extended service contract. On every invoiced sale, Dell keeps records showing a separate and exact amount for the service contract.

On May 4, 2001, plaintiff Diane Mohan purchased a computer package from Dell. Dell's then current option selection catalog, which was available to customers, stated that the one-year service contract could be upgraded from one to three years for an additional $119 over the basic package price. Mohan upgraded the basic service contract to three years. The service contract would be performed by a third party corporation, defendant BancTec. Dell sells these third party service contracts as an agent of BancTec. Dell's internal product price allocation for the aggregate three-year service contract (one-year basic plus a two-year extension) was $233. The invoice for the Mohan package stated a lump-sum price of $898 plus a $95 shipping charge. The customer invoice did not specify an itemized price for the service contract. At the time of the Mohan transaction, Dell was not registered with the state to collect sales and use tax on its own sales to California purchasers. However, BancTec was a registered seller in California and Dell collected sales and use tax on BancTec's behalf. The Dell invoice stated a taxable amount of $233 (Dell's internal valuation of the service contract) and a tax of $19.23. The amount stated for the tax was paid and remitted to SBE, as the state's tax collection agency.

On October 29, 2003, plaintiff DeMarco Enterprises, Inc. (DeMarco), purchased a computer package from Dell that included a three-year service contract and "Gold Technical Support," which is a three-year technical support contract. Dell, not a third party, was the service provider on the DeMarco service contract. The invoice to DeMarco stated a lump-sum price of $1,037, without a separate price for the contracts for service and technical support. DeMarco was taxed $85.58 on the entire lump-sum invoice price, which amount was remitted to SBE.

## II. PROCEDURAL HISTORY

This action is one of three consumer actions coordinated in the trial court for resolution.[4] (Cal. Rules of Court, rule 3.521.) One of the other actions was voluntarily dismissed, and the other was dismissed following demurrer. We recently affirmed the latter dismissal. (*Computer Service Tax Cases* (Dec. 10, 2007, A115868) [nonpub. opn.].)

This action was initiated in April 2003. The operative third amended complaint by plaintiffs Mohan and DeMarco states four causes of action: (1) unlawful competition and deceptive practices in the sale of consumer goods (Civ. Code, § 1770); (2) unfair business practices (Bus. & Prof. Code, § 17200); (3) fraud and intentional misrepresentation; and (4) negligent misrepresentation. Plaintiffs want the action certified as a class action and seek equitable relief, including an order adjudging Dell service contracts intangible property exempt from any California sales or use tax. Plaintiffs also ask that defendants be enjoined "from further charging and collecting from California residents a purported 'tax' on the purchase of optional service contracts." Additionally, plaintiffs seek restitution, damages, and attorney fees.

Defendants filed a cross-complaint against SBE. Defendants assert their belief that plaintiffs' claims are meritless but, "to account for the possibility that the Court could agree with Plaintiffs" and grant plaintiffs relief, defendants cross-complained against SBE to recover taxes collected from plaintiffs (and others similarly situated) and remitted to SBE. Defendants' operative first amended cross-complaint alleges eight causes of action for: (1) refund of use taxes paid; (2) refund of sales taxes paid; (3) indemnity; (4) equitable indemnity or partial equitable indemnity; (5) involuntary trust; (6) unjust enrichment; (7) money paid; and (8) money had and received.

In an effort to streamline resolution of the action, the parties stipulated to a bifurcated trial on the taxability of Dell service contracts. The parties agreed to a bench trial on the discrete issue of whether the sale by one or more of the retailer defendants of a service contract to Mohan in May 2001, or to DeMarco in October 2003, was subject to California sales or use tax.

In June 2007, the trial court issued its ruling and statement of decision on the taxability issue. The court found that all of the service contracts (standard and extended) are optional. The court further found that the service contracts

---

[4] Consumers in other states have also brought actions against Dell for its practice of collecting sales tax on its service contracts. (E.g., *Stenzel v. Dell, Inc.* (2005) 2005 ME 37 [870 A.2d 133].) To our knowledge, this case is the first to reach the substantive taxability issue.

are "intangible property, i.e.[,] rights to future labor for repair or maintenance." As intangible property, the purchase of a service contract is neither a sale nor a use of property subject to taxation. The trial court considered SBE and Dell's reliance on the so-called separate statement rule, under which sales and use tax "will be charged on all items in a bundled transaction unless the price for any non-taxable component is separately stated." The court found the rule "consistent with common sense and common practice within and beyond California," but inconsistent with the relevant tax statutes, which do not contain a separate statement rule covering computer service contracts. The court concluded that "service contracts of the two plaintiffs herein were not subject to California sales and/or use taxes." After ruling on the taxability issue, the trial court entered an order stating that appellate review of its statement of decision "through a writ proceeding will materially advance the conclusion of this complex litigation." (Code Civ. Proc., § 166.1.)

Dell filed a petition for a writ of mandate in this court asking us to review and to reverse the trial court's decision. On August 22, 2007, we issued an alternative writ directing the trial court to show cause why the petition should not be granted. Real parties in interest, SBE and plaintiffs, filed briefs responsive to the petition, and Dell filed a reply brief. Oral argument was heard and the matter submitted for decision.

## III. DISCUSSION

█ California applies sales and use tax to tangible personal property but not to intangible property and services. (Rev. & Tax. Code, §§ 6051, 6201; all further section references are to this code, except as noted.) Dell computers are taxable tangible personal property. Service contracts are nontaxable intangible property or services. The question presented here is whether a mixed sale in which a Dell computer and service contract sold at the same time, for a single undifferentiated price on the invoice, is wholly taxable (as Dell and SBE claim) or only partially taxable (as plaintiffs claim). We conclude that the transaction is only partially taxable—the computer is taxed and the service contract is not taxed. A service contract for a Dell computer is a distinct and separately identifiable component of the transaction entitled to individual tax treatment. Guiding principles of tax law lay the path to that conclusion.

*General overview of sales and use taxes*

■ California, like most states, imposes a statewide retail sales tax.[5] (§ 6051 et seq.) The California sales tax is imposed upon retailers for the privilege of conducting business, and is measured by the retailer's gross receipts from sales of all tangible personal property sold in this state. (§§ 6012, 6051; *City of Pomona v. State Bd. of Equalization* (1959) 53 Cal.2d 305, 309 [1 Cal.Rptr. 489, 347 P.2d 904]; *Brandtjen & Kluge, Inc. v. Fincher* (1941) 44 Cal.App.2d Supp. 939, 942 [111 P.2d 979].)

■ For purchases of personal property located outside California, the state imposes a tax upon consumers for the "storage, use, or other consumption in this state of tangible personal property." (§ 6201; see § 6010.5.) While use taxes are the obligation of the consumer (§ 6202, subd. (a)), retailers with a nexus to California must collect use tax from the purchaser and remit it to SBE. (§§ 6203, 6204; Cal. Code Regs., tit. 18, § 1684, subd. (a).) The use tax complements the sales tax by preventing the sales tax from " 'result[ing] in an unfair burden being placed upon the local retailer engaged solely in intrastate commerce as compared with the case where the property is purchased [out-of-state] for use or storage in California and is used or stored in this state. The two taxes are complemental to each other with the aim of placing the local retailers and their out-of-state competitors on an equal footing.' " (*Union Oil Co. v. State Bd. of Equal.* (1963) 60 Cal.2d 441, 449 [34 Cal.Rptr. 872, 386 P.2d 496], italics omitted.)

■ The United States Supreme Court summarized the interplay of California's sales and use taxes: "The [sales tax] levies a tax upon the gross receipts of California retailers from sales of tangible personal property; the [use tax] imposes an excise on the consumer at the same rate for the storage, use or other consumption in the state of such property when purchased from any retailer. As property covered by the sales tax is exempt under the use tax, all tangible personalty sold or utilized in California is taxed once for the support of the state government." (*Southern Pac. Co. v. Gallagher* (1939) 306 U.S. 167, 171 [83 L.Ed. 586, 59 S.Ct. 389].)

*The measure of sales and use taxes*

■ The measure of both sales and use tax—the base against which a percentage rate is applied—is generally the consideration paid for goods sold. Sales tax is imposed on California retailers as a percentage of their gross receipts from sales of tangible personal property. (§ 6051.) Use tax is

---

[5] The only states that do not impose a statewide sales tax are Alaska, Delaware, Montana, New Hampshire, and Oregon. (Blatt, *When are Warranties and Service Contracts Subject to Sales Tax?*, 59 CCH State Tax Review No. 12, p. 16 (Mar. 23, 1998).)

imposed on consumers as a percentage of the sales price of tangible personal property stored, used, or consumed in California. (§ 6201.) Both gross receipts for assessing sales tax and the sales price for assessing use taxes are similarly defined by the amount of the sale. (§§ 6011, subd. (a), 6012, subd. (a); see *Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 212 [105 Cal.Rptr.2d 407, 19 P.3d 1148] [statutory definitions of "gross receipts" and "sales price" are "mirror images."].)

*Taxable transactions under California law*

■ "California law imposes a tax on the retail sale of tangible personal property (§ 6051), but not on the sale of intangible personal property or on the performance of services (see §§ 6006, 6007). [¶] Of these three concepts, only tangible personal property is defined by statute. It means 'personal property which may be seen, weighed, measured, felt, or touched, or which is in any other manner perceptible to the senses.' (§ 6016.) [¶] Although there appears to be no comprehensive definition of intangible property [citation], such property is generally defined as property that is a 'right' rather than a physical object. [Citations.] . . . [¶] The third concept, service, has been defined by [the California Supreme Court] as the performance of labor for the benefit of another." (*Navistar Internat. Transportation Corp. v. State Bd. of Equalization* (1994) 8 Cal.4th 868, 874–875 [35 Cal.Rptr.2d 651, 884 P.2d 108] (*Navistar*).)

*The taxation of bundled and mixed transactions*

■ Drawing the line between taxable sales of tangible property and nontaxable sales of services or intangibles is sometimes difficult, especially where property that was largely created by personal services is transferred. (Hellerstein, State Taxation (3d ed. 2007) ¶ 12.08[1].) Where services and tangible property are inseparably bundled together, determination of the taxability of the transaction turns upon whether the purchaser's "true object" was to obtain the finished product or the service. (Cal. Code Regs., tit. 18, § 1501; *Navistar, supra,* 8 Cal.4th at p. 875; *In re Advance Schools, Inc.* (Bankr. N.D.Ill. 1980) 2 B.R. 231, 235 (*Advance Schools*) [applying California law].)

As an example, the true object in purchasing a sculpture is acquisition of the finished product, and thus the transaction is taxable without reduction for the service embodied in the product. (Cal. Code Regs., tit. 18, § 1501.) In contrast, the true object in purchasing tax advice is the performance of a service, so the entire transaction is not taxable despite the incidental furnishing of forms, binders or other tangible property. (*Ibid.*) In *Culligan Water Conditioning. v. State Bd. of Equalization* (1976) 17 Cal.3d 86, 96 [130

Cal.Rptr. 321, 550 P.2d 593], the court held that the true object of a water conditioning contract—in which water softening equipment is attached to a customer's home plumbing and periodically serviced—is the furnishing of the tangible equipment "which, by itself and without requiring any performance of human labor, softens the water."

■ The above examples involve so-called bundled transactions in which goods and services are inextricably intertwined in a single sale. (Hellerstein, State Taxation, *supra*, ¶ 12.08[1][c].) For bundled transactions of goods and services, the true object test applies and the entire transaction is generally taxed or not taxed as a whole. (Cal. Code Regs., tit. 18, § 1501; *Advance Schools, supra*, 2 B.R. at pp. 235–236.) In bundled transactions where the purchaser's true object is to obtain a finished product and services are incidental, services may be considered "part of the sale" of tangible property and thus subject to sales or use tax. (§§ 6011, subd. (b)(1), 6012, subd. (b)(1); see *Rylander v. San Antonio SMSA Ltd.* (Tex.App. 2000) 11 S.W.3d 484, 487 (*Rylander*) [court considers essence of transaction to determine whether service is part of sale of bundled goods].)

■ Tax rules sometimes allow allocation between taxable and nontaxable items bundled together if the value of the nontaxable item is separately stated. (Hellerstein, State Taxation, *supra*, ¶¶ 17.03[4], 19A.04[2][a][iv].) In California, for example, separately stated charges for specified transportation costs of goods are statutorily exempted from sales and use tax. (§§ 6011, subd. (c)(7), 6012, subd. (c)(7).) Transportation charges are regarded as separately stated "only if they are separately set forth in the contract for sale or in a document reflecting that contract, issued contemporaneously with the sale, such as the retailer's invoice." (Cal. Code Regs., tit. 18, § 1628, subd. (a).)

California views sales of tangible property bundled with intangibles, rather than services, differently. The regulatory true object test, "by its terms, applies only to transactions involving 'the performance of a service.' " (*Preston v. State Bd. of Equalization, supra*, 25 Cal.4th 197, 209.) The California Supreme Court has thus rejected the position that "a transfer of tangible property is not taxable if the transfer is incidental to the transfer of intangible property." (*Ibid.*; see *Navistar, supra*, 8 Cal.4th at p. 877.) In *Navistar*, the court held that the transfer of drawings and designs embodying technology for the manufacture of industrial turbine engines was taxable even if the principal object of the sale was to transfer the intangible or intellectual content embodied in the documents. (*Navistar, supra*, at p. 877.) *Navistar* did not articulate the precise manner for determining the taxation of concurrent transfers of tangible and intangible property. (Hellerstein, State Taxation, *supra*, ¶ 13.08[3].) However, the court's holding that documents containing

intangible trade secrets were fully taxable as a sale of tangible property was based "in part on the absence of a 'separate and distinct transfer of an intangible property right.' " (*Preston v. State Bd. of Equalization, supra,* at p. 220, discussing *Navistar, supra,* at pp. 877–878.) In short, the court was concerned with a truly bundled transaction in which taxable and nontaxable items were inextricably intertwined.

 Bundled transactions are distinguishable from transactions in which goods and services are sold together yet are readily separable—so-called mixed transactions. (*Advance Schools, supra,* 2 B.R. at pp. 235–236; *Rylander, supra,* 11 S.W.3d at pp. 487–488; Hellerstein, State Taxation, *supra,* ¶¶ 12.08[1], 19A.04[2][a][iv].) One respected commentator has stated that "a 'mixed transaction' involving separately identifiable transfers of goods and services can and should be distinguished from a 'bundled transaction' involving goods and services that are inextricably intertwined in a single sale." (Hellerstein, State Taxation, *supra,* ¶ 12.08[1][c]; see *id.,* ¶ 19A.04[2][a][iv].)

Unlike bundled transactions, the goods and services in a mixed transaction are distinct (not intertwined) and each is a significant object of the transaction (not one incidental to the other). (*Rylander, supra* 11 S.W.3d at pp. 487–488.) In mixed transactions, the separate elements of the transaction are analyzed as separate transactions for tax purposes. (*Id.* at p. 488.) The tangible property aspect of the transaction is taxed and the service aspect of the transaction is not taxed. (*Ibid.*)

Several examples of mixed transactions are illustrative. In *Overly Mfg. Co. v. State Board of Equal.* (1961) 191 Cal.App.2d 20, 21–28 [12 Cal.Rptr. 391], the court found that a lump-sum contract for steel door frames and doors was divisible into taxable tangible property (the manufactured frames) and nontaxable services (installation of the doors). The court noted the "dual nature" of the contract, which supplied products and provided separate services, and contrasted the transaction from those where an entire bundled transaction is taxable because service is incidental to the sale of goods. (*Id.* at pp. 26–28.)

In *Advance Schools,* an out-of-state correspondence school provided California students with both educational services and lesson materials in the form of books, printed lessons, training kits, and tools. (*Advance Schools, supra,* 2 B.R. at pp. 232, 237.) The school charged a single tuition fee, with no separate charge for the lesson materials. (*Ibid.*) The court held the school liable for use taxes on that portion of the tuition attributable to the sale of the lesson materials. (*Id.* at p. 238.) The court rejected the school's argument that the entire transaction was not taxable because a student's true object in paying tuition was to obtain educational services. (*Id.* at pp. 235–236.)

The federal bankruptcy court in *Advance Schools* noted that California recognizes "three possible situations with regard to mixed sales of services and property." (*Advance Schools, supra,* 2 B.R. at p. 235; see *In re Los Angeles Intern. Airport Hotel* (Bankr. 9th Cir. 1996) 196 B.R. 134, 138 [approving *Advance Schools's* analysis].) First, tangible property is the primary item or true object of the transaction, in which case tax applies to the entire sales price. (*Advance Schools, supra,* pp. 235–236.) Second, service is the primary item or true object of the transaction, in which case no tax applies to the transaction. (*Ibid.*) Third is "the truly mixed transaction," where property and services are distinct and consequential elements of the transaction, in which case the transaction is severable into its taxable and nontaxable components. (*Ibid.*) The school's reliance on the true object test was misplaced because that test applies only to the first two described situations where services rendered are inseparable from the property transferred. (*Id.* at p. 235.) The court found the lesson materials provided by the school to be separate from the educational services, and both the materials and services significant aspects of the transaction. (*Id.* at p. 237.) The court severed the transaction for tax purposes, and allocated tax upon the market price of the materials. (*Id.* at pp. 237–238.)

A Texas appellate court likewise allocated taxes to telecommunications equipment separate from engineering services sold on a single invoice in *Rylander, supra,* 11 S.W.3d at pp. 485–490. The tax agency assessed sales tax on the entire transaction upon the contention that the engineering services were a " 'part of the sale' " of the telecommunications equipment. (*Id.* at pp. 486–487.) Texas, like California, considers the ultimate object of the sale in determining whether a nontaxable service bundled with a taxable sale of goods is a part of the sale and thus taxable. (*Id.* at p. 487.) In accord with the *Advance Schools* court that applied California law, the Texas Court of Appeals discerned three categories of transactions: (1) the real object of the transaction is the purchase of tangible property and services are incidental (all taxable); (2) the real object is the purchase of services and the property is incidental (all nontaxable); and (3) the real object is both services and property and the two elements are distinct and identifiable (property alone taxable). (*Id.* at pp. 487–488.) The court held that the engineering services were readily separable from the purchase of equipment and thus not " 'a part of the sale' " of tangible personal property and consequently not subject to sales tax. (*Id.* at pp. 489–490; see *New England Tel.& Tel. Co. v. Clark* (R.I. 1993) 624 A.2d 298, 300–302 (*Clark*) [readily separable services not taxed as part of sale of telecommunications equipment].)

*The taxation of warranties and service contracts*

 A warranty may be defined as "[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer,

distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance." (Civ. Code, § 1791.2, subd. (a)(1).)

█ A service contract generally means "a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance, or repair of a consumer product." (Civ. Code, § 1791, subd. (*o*).)

█ An express warranty is both a representation of fitness and an agreement to repair. (*Gavaldon v. DaimlerChrysler Corp.* (2004) 32 Cal.4th 1246, 1258 [13 Cal.Rptr.3d 793, 90 P.3d 752].) A service contract is an agreement to repair. (*Ibid.*) Both warranties and service contracts generally obligate the seller to furnish parts, materials, and labor necessary to maintain a consumer product for a specified period of time. (Civ. Code, §§ 1791, subd. (*o*), 1791.2, subd. (a)(1), 1794.4, subd. (b); Cal. Code Regs., tit. 18, §§ 1546, subd. (b)(3)(B), 1655, subd. (c)(3).) Warranties and service contracts may be mandatory or optional. They are mandatory "when the buyer, as a condition of the sale, is required to purchase" the warranty or service contract from the seller. (Cal. Code Regs., tit. 18, §§ 1546, subd. (b)(3)(A); 1655, subd. (c)(1).) A warranty or service contract is optional "when the buyer is not required to purchase" the warranty or service contract from the seller, "i.e., the buyer is free to contract with anyone" he or she chooses. (*Ibid.*)

█ In California, and in every state that imposes a sales tax, mandatory warranties are taxed as incidental to the sale of tangible property. (Cal. Code Regs., tit. 18, §§ 1546, subd. (b)(3)(B), 1655, subd. (c)(2); Blatt, *When are Warranties and Service Contracts Subject to Sales Tax?*, 59 CCH State Tax Rev., *supra*, No. 12, p. 1; Hellerstein, State Taxation, *supra*, ¶ 15.04[4][a][i]; see *Gavaldon v. DaimlerChrysler Corp., supra*, 32 Cal.4th at p. 1258, fn. 3 [express warranties are an integral part of the purchase of a product].) A manufacturer that purchases replacement parts (tangible personal property) to fulfill its mandatory warranty obligations does not pay sales tax on those parts; it is a reseller of the parts to the consumer who has effectively prepaid the tax when it paid tax on the warranty. (Cal. Code Regs., tit. 18, §§ 1546, subd. (b)(3)(B), 1655, subd. (c)(2); Hellerstein, State Taxation, *supra*, ¶ 15.04[4][a][iii].)

Optional warranties receive different tax treatment. Most of the states with statewide sales tax, including California, do not tax optional warranties. (Cal. Code Regs., tit. 18, § 1655, subd. (c)(3); 2A State Bd. of Equalization, Bus. Taxes Law Guide, Sales & Use Tax Annots. (1998) Annot. No. 120.0009 [all further Annotation citations are to this guide]; Hellerstein, State Taxation, *supra*, ¶ 15.04[4][b][i]; Blatt, *When are Warranties and Service Contracts Subject to Sales Tax?*, 59 CCH State Tax Rev., *supra*, No. 12, pp. 1, 3.)

A manufacturer that provides replacement parts to fulfill its optional warranty obligations pays tax on the parts as a consumer of the parts furnished. (Cal. Code Regs., tit. 18, §§ 1546, subd. (b)(3)(C), 1655, subd. (c)(3).)

A number of states tax repair services but do not tax optional warranties on the theory that an optional warranty constitutes the purchase of an intangible right, not the purchase of services: "[p]erforming repair services does not include the act of entering into a contractual commitment to provide in the future and on a contingent basis repair services." (*Covington Pike Toyota, Inc. v. Cardwell* (Tenn. 1992) 829 S.W.2d 132, 135; see generally Hellerstein, State Taxation, *supra*, ¶ 15.04[4][b][i].) Other states that tax repair services have construed optional warranties as a purchase of taxable services. (E.g., *South Central Utah v. Auditing Division* (Utah 1997) 951 P.2d 218, 224–225.) California has had no need to conclusively classify optional warranties as either intangibles or services because neither is taxable here. Thus, it has been sufficient for California taxing authorities to state that "[a] contract for optional [computer] hardware maintenance is not a contract for the sale of tangible personal property and no sales or use tax applies to the charge." (Annot. No. 120.0009.)[6]

*The taxation of Dell service contracts*

Dell computers are warranted against defects in materials and workmanship for a specified period of time, at no additional cost to the consumer. The warranties are "return to facility" warranties requiring the consumer to mail the defective product or part to Dell for repair or replacement. At issue here are optional warranties that extend the basic warranty for a longer period of time, and optional service contracts that provide onsite computer repair by a service technician.[7]

SBE concedes that Dell service contracts are optional and, if sold alone, are not taxable. SBE also concedes that Dell service contracts, if sold with

---

[6] Computer software maintenance contracts present a special case. The maintenance of "canned" (not customized) software often involves the provision of both storage media on which program updates are recorded (tangible personal property) and consultation services. (Cal. Code Regs., tit. 18, § 1502, subd. (f)(1)(C).) Optional canned software maintenance contracts sold for a single price are taxed at 50 percent of the lump-sum charge, representing the sale of tangible personal property. (*Ibid.*) This appeal does not concern computer software.

[7] SBE contends that Dell service contracts furnish both repair services and replacement parts. Dell asserts that service contracts provide repair services alone, and replacement parts are provided under the warranties. We note that service contracts generally obligate the seller to provide replacement parts, unless expressly excluded. (Civ. Code, § 1794.4, subd. (b).) However, it is irrelevant for our purposes whether replacement parts are provided under Dell service contracts or warranties. The warranties at issue are optional extended warranties conjoined with the service contracts for a single price.

computers, are not taxable *provided* that the charge for the service contract is separately stated on the sales invoice or other contract of sale. It is SBE's position that the absence of a separate statement of the charge for optional service contracts render them taxable. While SBE's interpretation of the laws it enforces is entitled to consideration, the ultimate resolution of legal questions rests with the courts. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12–15 [78 Cal.Rptr.2d 1, 960 P.2d 1031] (*Yamaha*); *Culligan Water Conditioning v. State Bd. of Equalization, supra,* 17 Cal.3d at p. 93.) We respect SBE's interpretation of the tax laws as applied to the Dell transactions, but we cannot endorse it.

The fundamental starting point is the recognition that California imposes a tax on the retail sale or use of tangible personal property (§§ 6051, 6201), but not on the sale or use of intangible personal property or services. (*Navistar, supra,* 8 Cal.4th at p. 874.) Dell service contracts are not tangible personal property, as all the parties agree. The parties debate only whether Dell service contracts are properly classified as services (as Dell and SBE argue) or intangible property (as plaintiffs argue). As Dell observes, classification is difficult because the service contracts share characteristics of each: the contracts provide an apparent service of telephone technical support, and an arguably intangible right to future repair. Resolution of the classification debate is unnecessary here because neither services nor intangibles are taxable.

SBE concedes that service contracts generally are not taxable and justifies its taxation of Dell service contracts on the fact that the service contracts are sold without a separate statement of the value of the contracts on the sales invoice. It is the so-called bundled sale of computers (tangible personal property) with service contracts (intangibles or services) that render the latter taxable, according to SBE. Dell and plaintiffs likewise construe the subject transactions as bundled sales of taxable and nontaxable items. In this respect, all parties err, and that error has misdirected the analysis of the taxation issue.

The subject transactions are not bundled sales, but rather mixed transactions. As noted above, "a 'mixed transaction' involving separately identifiable transfers of goods and services can and should be distinguished from a 'bundled transaction' involving goods and services that are inextricably intertwined in a single sale." (Hellerstein, State Taxation, *supra,* ¶ 12.08[1]; see *id.,* ¶ 19A.04[2][a][iv].) So, too, is a mixed transaction involving separately identifiable transfers of tangible and intangible property distinguishable from a bundled sale of intertwined property. Dell's sale of computers with service contracts is not, properly speaking, a bundled sale.

The service contracts are readily separable from the computers Dell sells. Dell, for marketing purposes, presents particular product configurations to its

customers but these configurations are not fixed. Dell proudly advertises: "At Dell, you can custom-build your dream system from the ground up." As a Dell tax manager explained in her declaration submitted at trial: Dell "typically offer[s] to their customers various models of Dell-branded computer systems. Each different model is often available in a basic configuration of computer components (which may include, for example, a microprocessor, memory, hard drive, monitor, warranty, service contract, etc.) sold for a single, total price for the basic configuration. Dell customers typically have the option to customize a computer model by upgrading or downgrading various computer components in exchange for an increase or decrease in the single, total price for the customer's order."

■ Customization includes a customer's "option to purchase a computer without a service contract in exchange for a reduction in the overall price for the customer's order." The variability of the sales price based on the customer's selection of items to include or exclude from the basic product configuration shows that the sale is not an intertwined bundled transaction. As the drafters of a proposed uniform state tax law recognize, a bundled transaction " 'does not include the sale of any products in which the "sales price" varies, or is negotiable, based on the selection by the purchasers of the products included in the transaction.' " (Hellerstein, State Taxation, *supra*, ¶ 19A.04[2][a][iv], quoting the Streamlined Sales and Use Tax Agreement (2007) appen. C, pt. I.)

It is also clear that the computer and service contract are each significant aspects of the transaction, and one is not incidental to the other. Dell touts its "award-winning service," as well as its computer equipment, and the cost of service contracts is far from de minimus. In plaintiff Mohan's purchase of a computer and service contract, for example, the service contract was valued at over 20 percent of the total price of the transaction. In *Advance Schools, supra*, 2 B.R. at page 237, where the court severed tuition paid for nontaxable education services from taxable lesson materials, the court found that materials valued at close to 20 percent of the total tuition charged could not "be deemed an insignificant aspect of the transaction."

■ We conclude that the proper approach under California law is to tax the computer (tangible personal property) and not the service contract (service or intangible property). As other courts have recognized, "when there is a fixed and an ascertainable relationship between the value of the article and the value of the services rendered, and each is a consequential element capable of a separate and distinct transaction, then the elements must be analyzed as separate transactions for tax purposes." (*Clark, supra*, 624 A.2d at p. 301.)

*Dell service contracts are not "a part of the sale" of computers*

SBE correctly observes that the total taxable amount for which property is sold includes "[a]ny services that are a part of the sale." (§§ 6011, subd. (b)(1), 6012, subd. (b)(1).) We will assume, for purposes of argument, that SBE is also correct in classifying Dell service contracts as services rather than intangible personal property. But we cannot accept SBE's assertion that Dell service contracts are "a part of the sale" of computers. As we noted above, it is with intertwined bundled transactions, where the purchaser's true object is to obtain a finished product and services are incidental, where services may be considered "part of the sale" of tangible property and thus subject to sales or use tax. (§§ 6011, subd. (b)(1), 6012, subd. (b)(1); see Cal. Code Regs., tit. 18, § 1501; *Culligan Water Conditioning v. State Bd. of Equalization, supra,* 17 Cal.3d at p. 97; *Rylander, supra,* 11 S.W.3d at p. 487.) Dell's sale of service contracts with computers is not an intertwined bundled transaction. Computers may be purchased without service contracts, and the transaction price is reduced by a specified sum if the service contract is declined. Dell service contracts are not "part of the sale" of computers, but a separate object of the transaction at a readily ascertainable value.

*Dell service contracts are not taxable even without separate invoicing*

SBE and Dell maintain that it is proper to treat Dell service contracts as taxable because the value of the contracts is not separately stated on an invoice. SBE contends that, in a concurrent sale of tangible personal property and services, the generally nontaxable service element is taxable unless its purchase is optional *and* its value is separately stated on an invoice. SBE and Dell present the so-called separate statement rule as a "general principle" or "general rule" in sales and use tax administration, and argue that it should be upheld because it promotes the efficient administration of the tax code.

While tax administrators may properly apply the separate statement rule in a number of contexts, this is not one of them. The primary sources of the separate statement rule are tax statutes that expressly require separately stated charges. In California, the sales price of tangible personal property, upon which tax is imposed, is defined to exclude "[s]eparately stated charges for transportation." (§ 6011, subd. (c)(7).) Other states statutorily exclude various charges from taxation if separately stated or identified. (E.g., Tex. Tax Code Ann., § 151.007; see generally Hellerstein, State Taxation, *supra,* ¶ 17.01[1], quoting the Streamlined Sales and Use Tax Agreement definition of "sales price.") As SBE conceded at trial, there is no California statute or regulation that requires service contract charges to be separately stated to avoid taxation.

Another alleged source of the separate statement rule is the administrative enforcement of statutes carrying a presumption of taxability. (§§ 6091,

6241.) "[T]he burden of proof concerning the right to a tax exemption is on the taxpayer . . ." because "the taxpayer is in the best position to create and maintain records of his transactions and to destroy or conceal such records." (*Pope v. State Bd. of Equalization* (1988) 202 Cal.App.3d 73, 84 [248 Cal.Rptr. 246].) When property and services are purchased together, separate invoices or separate itemization on the same invoice are useful in meeting the taxpayer's evidentiary burden of proving tax exemption for the service item in the transaction. In many transactions, separate itemization may be the only practical means of proof. But no statute or regulation demands a separate statement of a service contract's value on an invoice as the exclusive means of meeting the taxpayer's evidentiary burden. In the unusual situation presented here, the value of Dell service contracts is readily ascertainable without an itemized invoice, as discussed above.

SBE maintains, however, that it has reasonably and consistently interpreted the tax laws to require that the value of services be separately stated on an invoice to avoid taxation where, as here, services are sold concurrently with tangible personal property. SBE says it may insist upon an itemized invoice as the only acceptable proof of a service's value and tax exemption, and that its interpretation of tax laws to require an invoice with a separately stated value for services is entitled to judicial deference. The presumption of taxability was the express basis for SBE's reliance on the separate statement rule in the trial court. On appeal, SBE says the separate statement rule is "implicit" in provisions assessing tax on services that are part of the sale of tangible personal property. (§§ 6011, subd. (b)(1), 6012, subd. (b)(1).) We do not understand SBE to argue that the form of invoicing dictates the taxability of services (a service is or is not a part of taxable property depending on whether the service is separately priced) but to argue for a presumption of taxability (a separate statement of value is necessary for SBE to "determine whether a service contract is optional," and thus not taxable, as SBE phrases the point on appeal). As SBE expressed the point at trial, "[t]he separately stated requirement is an evidentiary rule that allows the parties to the transaction, and SBE, to determine easily whether the service is or is not part of the sale of the tangible property."

Dell supports SBE's reliance on the separate statement rule, and maintains that SBE "routinely uses such a separately-stated rule to determine the taxability of services sold with tangible property." Both SBE and Dell rely on a series of tax annotations to support their claim of a consistent administrative construction of the tax laws to require that the value of services sold with property be separately stated on an invoice.

Tax annotations are summaries of opinions by SBE attorneys "of the business tax effects of a wide range of transactions." (*Yamaha, supra,* 19

Cal.4th at p. 4.) "[T]he summaries are prompted by actual requests for legal opinions by the Board, its field auditors, and businesses subject to statutes within its jurisdiction. The annotations are brief statements—often only a sentence or two—purporting to state definitively the tax consequences of specific hypothetical business transactions." (*Id.* at pp. 4–5.) Annotations "do not have the force and effect of law." (Cal. Code Regs., tit. 18, § 5700, subd. (a)(1).)[8]

The California Supreme Court has considered "what legal effect courts must give to the Board's annotations when they are relied on as supporting its position in taxpayer litigation." (*Yamaha, supra,* 19 Cal.4th at p. 6.) The court concluded that "[a]n agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts; however, unlike quasi-legislative regulations adopted by an agency to which the Legislature had confided the power to 'make law,' and which, if authorized by the enabling legislation, bind this and other courts as firmly as statutes themselves, the binding power of an agency's *interpretation* of a statute or regulation is contextual: Its power to persuade is both circumstantial and dependent on the presence or absence of factors that support the merit of the interpretation." (*Id.* at p. 7, original italics.) A court is more likely to defer to an agency interpretation that is a long-standing and consistent interpretation of the law. (*Id.* at pp. 12–13.) In contrast, a " 'vacillating position . . . is entitled to no deference.' " (*Id.* at p. 13.)

SBE has not consistently applied a separate statement rule to concurrent sales of services and tangible personal property. While Dell says that SBE "routinely" uses a separate statement rule to determine the taxability of services sold with tangible property, Dell also admits that SBE has used several different approaches "from time to time." The multiplicity of SBE's approaches to the taxation of concurrent sales of goods and services is apparent in the regulations and annotations. These approaches include (1) taxing or not taxing the transaction as a whole, depending on whether the true object of the transaction is taxable property or nontaxable services (Cal. Code Regs., tit. 18, § 1501 [accounting services not taxed at all despite incidental provision of binders or other property]; Annot. No. 330.2150 [video production sets taxed in full without reduction for design services]); (2) apportioning the purchase price between taxable property and nontaxable services when the value of the services are separately stated (e.g., Annot. Nos. 315.0610 [tire balancing charges nontaxable when separately stated],

---

[8] An example illustrates the annotation form: "Service Policies. Where an appliance dealer sells a television service policy in the nature of an optional warranty (not mandatory upon purchase), even if sold with the set, or as a 'second-year' policy, it is a service contract not includable in taxable gross receipts. The dealer is regarded as the consumer of any parts used in performing this independent service. 5/21/54." (Annot. No. 490.0680.)

557.0573 [firewood stacking charges taxable when not separately stated]); and (3) apportioning the purchase price between taxable property and nontaxable services regardless of whether the value of the services are separately stated (e.g., Annot. No. 295.0035.200 [apportioning lump-sum price between birthday balloons and singing delivery service]).

Nor has SBE always applied a separate statement rule to the narrow subcategory of concurrent sales of tangible personal property and optional service contracts. Contrary to the claims of SBE and Dell, SBE Annotations do not support but, in fact, contradict the assertion that SBE has consistently interpreted the tax laws to "require[] the charge for an optional service contract to be separately stated to avoid taxation." The Annotations demonstrate that SBE sometimes apportions the price paid for property and a service contract purchased together, despite the seller's failure to separately state the value of the service contract. For example, in the case of a manufacturer of industrial equipment, the manufacturer sold a lump-sum service agreement providing maintenance for the computerized equipment and software. (Annot. No. 120.0350.) SBE found that "tax applies to the portion of the lump-sum service agreement that represents the charge" for software maintenance (updates in tangible form on storage media) and does not apply to the portion of the agreement representing the charge for equipment maintenance. (Annot. No. 120.0350.) SBE taxed the tangible property component alone despite the manufacturer's failure to itemize the value of the equipment service contract. (Annot. No. 120.0350.)

SBE repeated this interpretation of the tax laws in a subsequent Annotation concerning computers, where it stated: "when a bundled contract includes a software maintenance portion and a hardware maintenance portion, the charge for the hardware portion is nontaxable. The contract should be prorated between the taxable software maintenance and the nontaxable hardware maintenance portion of the contract." (Annot. No. 490.0429; accord Annot. No. 490.0727 [service agreement for computer software and hardware maintenance not taxable on hardware component].) In another context, SBE stated that an optional service contract sold with a television was not taxable. (Annot. No. 490.0680.) SBE concluded that the service contract was "not includable in taxable gross receipts," without conditioning that conclusion on an invoice itemizing the value of the service contract. (Annot. No. 490.0680.)

SBE has also required a company that sells photocopy machines and related services and supplies to allocate the lump-sum price charged for a service contract and supplies. (Annot. No. 315.0768.) On that occasion, SBE opined: "[w]here both taxable and nontaxable items are sold for a single price, an allocation must be made between the taxable and nontaxable charges." (Annot. No. 315.0768.) SBE reached a similar conclusion concerning a company that sells printer service contracts that include replacement ink

cartridges. (Annot. No. 490.0430.) SBE required the company to make "[a]n allocation between the taxable [ink cartridges] and nontaxable [service contract] charges." (Annot. No. 490.0430.)

SBE admits that the transactions described in these Annotations demonstrate a departure from the asserted "general principle" that the value of services must be stated separately before SBE will apportion an aggregate price for a concurrent sale of goods and services. SBE offers an explanation that amounts to the following: SBE uses apportionment when it increases tax revenue but refuses apportionment when it decreases tax revenue. SBE says it apportions a lump-sum price for goods and services when "necessary to ensure that tax is collected on the charge for a taxable item" but interposes the separate statement rule and refuses to apportion a lump-sum price for goods and services when apportionment is unnecessary to collect tax on a taxable item. Thus, SBE says it apportions an aggregate charge for taxable software maintenance and nontaxable hardware maintenance to collect on the taxable component that might otherwise go uncollected. (Annot. No. 490.0429.) SBE explains that it does not apportion an aggregate charge for taxable Dell computers and nontaxable service contracts because Dell willingly remits tax on the aggregate price and "has not used the bundling to avoid tax on the computer portion of its sales." This is a strange explanation. It does not show a consistent and principled application of the tax laws deserving of judicial deference and it fails to account for the varying tax treatment of concurrent sales of goods and services.

Our own review of the limited number of Annotations presented to us by the parties suggests that the varying tax treatment of concurrent sales of goods and services may rest on a sound basis, but not the one offered by SBE and not one that aids its position in this litigation. The principles we discussed earlier are instructive. Where services and tangible property are inseparably bundled together, determination of the taxability of the transaction turns upon whether the purchaser's "true object" was to obtain the finished product or the service. (Cal. Code Regs., tit. 18, § 1501; *Navistar, supra*, 8 Cal.4th at p. 875; *Advance Schools, supra*, 2 B.R. at p. 235.) For bundled transactions of goods and services, the true object test applies and the entire transaction is generally taxed or not taxed as a whole. (Cal. Code Regs., tit. 18, § 1501; *Advance Schools, supra*, 2 B.R. at pp. 235–236.) This explains the Annotation opining that full taxation applies to video production sets, which are the object of "the customers['] desire," without reduction for design services. (Annot. No. 330.2150.)

Despite authority to tax the entire transaction where property is the true object of the transaction, tax authorities may adopt more taxpayer-friendly rules that allow apportionment between taxable and nontaxable items bundled

together. (Hellerstein, State Taxation, *supra*, ¶¶ 17.03[4], 19A.04[2][a][iv].) Where the purchase of vehicle tires is ostensibly the true object of a transaction, the incidental service for tire balancing is presumptively taxable as part of the sale of the tires but is exempted when the service charge is separately stated. (Annot. No. 315.0610.)

Bundled transactions are distinguishable from mixed transactions where goods and services are sold together yet are readily separable. (*Advance Schools, supra*, 2 B.R. at pp. 235–236; *Rylander, supra*, 11 S.W.3d at p. 487; Hellerstein, State Taxation, *supra*, ¶ 12.08[1]; see *id.*, ¶ 19A.04[2][a][iv].) Unlike bundled transactions, the goods and services in a mixed transaction are distinct (not intertwined) and each is a significant object of the transaction (not one incidental to the other). (*Rylander, supra*, at pp. 487–488.) In mixed transactions, the separate elements of the transaction are analyzed as separate transactions for tax purposes. (*Rylander, supra*, 11 S.W.3d at p. 488.) The tangible property aspect of the transaction is taxed and the service aspect of the transaction is not taxed. (*Ibid.*) Thus, in the lump-sum sale of a printer maintenance contract that includes replacement ink cartridges, apportionment is proper because the goods and services are distinct and each is a significant object of the transaction. (Annot. No. 490.0430.)

With these principles in mind, it is clear that a Dell service contract sold with a computer falls within this latter category of mixed transactions. We recognize that, even in the case of mixed transactions, the taxpayer bears "the burden of proof concerning the right to a tax exemption." (*Pope v. State Bd. of Equalization, supra*, 202 Cal.App.3d at p. 84.) As we noted earlier, separate itemization is useful in meeting the taxpayer's evidentiary burden of proving tax exemption for a service item in any transaction. But we will not impose a rule requiring a separate statement of a service contract's value on an invoice as the *exclusive* means to satisfy this burden of proof where, as here, there is no statute, regulation, or consistent administrative construction mandating a separate statement.

We recognize that a separate statement of value on an invoice eases SBE's auditing efforts. But, as SBE concedes on appeal, "the tax laws must be administered as they are written without regard to administrative costs or convenience." Moreover, any administrative costs and inconvenience occasioned by the lack of an itemized invoice listing the value of Dell service contracts can be minimized by SBE action. SBE has the power to require retailers to keep "records, receipts, invoices, and other pertinent papers in such form" as SBE may require to administer the tax laws. (§ 7053.) Contrary to SBE's stated concerns on appeal, nothing in our decision today need burden SBE with a wide-ranging search of a retailer's internal records to determine the proper tax treatment of a service contract.

## IV. DISPOSITION

The alternative writ, having served its purpose, is discharged. The petition for a peremptory writ of mandate is denied.

Ruvolo, P. J., and Rivera, J., concurred.