### In re SHANNON and Janelle B.

#### No. 97–399–Appeal.

Supreme Court of Rhode Island.

Nov. 20, 1998.

Frank P. Iacono; Thomas J. Corrigan, Washington Crossing, PA; Rossie Lee Harris, Jr.

Kelly Monteiro, Paula Rosin, Providence.

### ORDER

This case came before the Court on November 4, 1998 pursuant to an order directing the respondent-mother to appear and show cause why the issues raised in her appeal from a Family Court's finding of abuse and neglect of her daughter Shannon and a finding of neglect of her daughter Janelle should not be summarily decided.

After hearing the arguments of counsel and considering the memoranda submitted by the parties, we are of the opinion that cause has not been shown. The issues raised in the appeal will be decided at this time.

Shannon and Janelle are the adopted daughters of the respondent-mother, Katherine Burton (Katherine). In April 1996, the Department for Children, Youth, and Families (DCYF) became involved with the family

---

1. The complaint is filed against Parker and un- known Jane and John Does.

because Shannon, who was thirteen at the time, told a school counselor and the Providence police that her adoptive father, Katherine's husband, had been sexually molesting her since age six. Shannon explained that the molestation progressed from fondling over clothes to oral sex and digital penetration. The abuse allegedly took place at night while Katherine was at church, which she attended three times a week. Shannon never told her mother of the abuse because her father told her that her mother would not believe her and it would just make her feel bad. Shannon believed him. Shannon also disclosed that both she and her sister Janelle had been disciplined through beatings with a belt.

As a result of the abuse, Shannon began running away from home. In fact, for the two weeks prior to her revealing the abuse to the school counselor she had been staying at a friend's house. During those two weeks, Katherine had filed a wayward and disobedient petition in the Family Court. Katherine maintains that Shannon's complaint of abuse was in response to the filing of that petition, but Shannon explained that the disclosure of the sexual abuse to her school counselor was in response to the questions posed by the mother of the friend with whom Shannon was staying.

Once DCYF became involved in the case, a DCYF investigator spoke to Katherine about the alleged abuse. Her initial reaction to Shannon's disclosures was one of disbelief. She also said that she always took the children with her when she went to church, a statement which the other three children in the Burton home, as well as Shannon's adoptive father, contradicted during the investigator's interviews with them. during the investigator's interview with Shannon's adoptive father, he neither denied nor admitted molesting Shannon. However, he eventually entered a plea to the allegations of neglect and abuse.

Janelle, who was Shannon's adoptive sister, denied that she had been sexually molested. She did confirm, however, that she and her sister were left alone with her adoptive father while Katerine went to church at night.

All the children, including two foster children who were in the Burton home at the time of DCYF's involvement, were removed from the home because of Katherine's refusal to believe that the sexual abuse had occurred. Further interviews with a mental health counselor as well as Katherine's testimony at the hearing on the DCYF petition to terminate her parental rights revealed that Katherine has remained unable or unwilling to believe that the abuse had ever occurred. However, she did testify at the Family Court hearing that she will never trust her husband again and that, at least as of the time of the hearing, she had not been in her husband's presence for almost a year. Because Katherine was unable to accept and believe Shannon's allegations, the Family Court justice granted the termination of parental rights petition after finding that Shannon had been neglected and abused and finding that Janelle had been neglected. Katherine appealed therefrom.

Katherine raises two claims of error on appeal, both pertaining to evidentiary rulings made by the Family Court justice. The first of those alleged errors relates to the Family Court justice's limitation of the cross-examination of the DCYF investigator, Erin O'Brien (O'Brien). The Family Court justice refused to permit Katherine's counsel to inquire about the investigator's educational background although he had permitted her to offer her professional opinion regarding Katherine's ability to protect her children from harm while remaining in a state of denial concerning Shannon's molestation allegations. We conclude this first alleged error to be without merit.

The scope of cross examination is a matter left to the sound discretion of the trial justice. *See New England Tel. & Tel. Co. v. Clark*, 624 A.2d 298 (R.I.1993). With respect to this case, the inquiry on cross examination into the DCYF's investigators educational background was of limited probative value since two other expert witnesses had opined and testified that Katherine could not adequately protect her children while continuing to deny Shannon's allegations. The primary focus of O'Brien's direct testimony was to simply describe the circumstances surround-

ing DCYF's involvement in the case. Her opinion as to Katherine's ability to protect the children constituted just one small part of her overall testimony. It was the damning testimony of the two other expert witnesses, who both testified without objection, that served to convince the Family Court justice that Katherine was unfit to protect her children from abuse. Therefore, counsel's attempt to delve into the investigator's educational background merely because she had given an opinion that was cumulative to a fact established by other expert witnesses would have been of scant assistance to the fact finder. Accordingly, the trial justice did not err in limiting the cross examination of O'Brien.

The next evidentiary error raised by Katherine is that the Family Court trial justice should not have permitted the testimony of the expert witness, Janice Archer (Archer), who had examined Shannon for the purpose of diagnosing her medical condition because it contained inadmissible hearsay. Archer had testified as to a statement made to her by Shannon during the examination that another child in the Burton home had also attempted to inform Katherine about the sexual abuse. We conclude that the admission of that testimony, if error, was harmless error. The Family Court justice in his decision gave no indication that he relied on the statement in reaching his decision and we discern more than sufficient other evidence in the record to support the Family Court justice's finding of abuse and neglect with regard to Shannon and his finding of neglect as to Janelle.

Katherine finally contends on appeal that the evidence presented at the hearing on DCYF's petition actually demonstrated that she did in fact believe Shannon's allegations of abuse, evidenced by the fact that she separated from her husband following Shannon's disclosures. The Family Court justice after reviewing the evidence viewed the evidence differently, however, and after evaluating the credibility of the trial witnesses, based his decision to terminate Katherine's parental rights in great part on his credibility findings. We discern no error in that determination.

Accordingly, for all the foregoing reasons, Katherine's appeal is denied and dismissed. The judgment appealed from is affirmed. The papers in this case are remanded to the Family Court.